UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:21-cr-00049

———

**United States of America**

v.

**Marland Henry Gibson**

———

# ORDER

Defendant was indicted for violating 18 U.S.C. § 922(g), felon in possession of a firearm. Doc. 1. Before the court are defendant's motion to dismiss and motion to suppress evidence. Docs. 18, 19. The court denies both motions.

**Analysis**

## I.  Motion to dismiss

Defendant seeks to dismiss this case on seven grounds. None of them have merit. The court discusses each in turn.

### A.  Whether the court has personal jurisdiction when defendant is serving a state sentence and pursuing an appeal of that state conviction

Defendant argues that the court does not have personal jurisdiction over him because he is an inmate in state prison with a state appellate proceeding pending. Doc. 18 at 15. He is essentially arguing that the federal courts have no jurisdiction over any inmate who has a state appellate proceeding pending. There is no authority to support this argument.  "Federal district courts have exclusive and original jurisdiction over all federal crimes," which is invoked with an "indictment charging a defendant with violating federal law." *United States v. Romans*, 823 F.3d 299, 315 (5th Cir. 2016); 18 U.S.C. § 3231. The Constitution, Sixth Amendment, and the Federal Rules of Criminal Procedure also guarantee the right of a criminal defendant to be tried in the district where the crime was committed. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where

the offense was committed.").The indictment specified that the federal offense occurred in Gregg County, Texas, which is in this district.  The government established, by a preponderance of the evidence, that venue is proper here. *See Romans*, 823 F.3d at 316. Thus, the court has personal jurisdiction.

## B. Whether the court has subject-matter jurisdiction because the indictment is allegedly defective under the Commerce Clause

Defendant argues that the court does not have subject-matter jurisdiction over him because the indictment is defective in that it did not allege facts supporting the allegation that he possessed the firearm "in and affecting commerce." Doc. 18 at 17. One of the essential elements of 18 U.S.C. § 922(g) is that the firearm be possessed "in or affecting commerce." Facts, however, are not necessary in a federal indictment that contains an interstate commerce element. *United States v. Williams*, 679 F.2d 504, 506 (5th Cir. 1982). Alleging effects on interstate commerce in "conclusory terms, without evidentiary detail, is not fatally insufficient." *Id.* As long as the indictment alleges each of the requisite elements of the charged offense, alleging the elements by reciting the statutory language is valid. *Id.* at 508. The indictment here alleges all the essential elements of the offense using the statutory language. Doc. 1. The indictment is therefore not defective, and the court has subject-matter jurisdiction.

## C. Whether the indictment should be dismissed under 18 U.S.C. § 3161(b) because of the delay between the date of his arrest and the date of his indictment

Next, defendant argues that there was an unlawful delay between his arrest on March 20, 2021, and his indictment on June 17, 2021. Doc. 18 at 22. However, the 30-day requirement set by 18 U.S.C. § 3161(b) applies only to an indictment issued in connection with the federal criminal offense for which the defendant was arrested. *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000). Here, Gibson was not arrested for the federal crime alleged in the indictment until *after* the indictment was returned by the grand jury. As

such, there is no way the 30-day clock could have expired because the indictment came *before* the arrest for the federal criminal offense. The 30-day clock did not begin running from March 20, 2021, when he was arrested on a state offense, but rather from the date when he was arrested on his federal criminal offense.

Defendant's main argument is that there is an exception to this rule that triggers the 30-day requirement: when government officials use a "mere ruse" to hold a defendant on state accusations for later federal prosecution on identical charges by colluding with the State. However, it is the defendant's burden to demonstrate that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution, thereby colluding to bypass the requirements of the Speedy Trial Act. *Id.* at 598. In cases like this, where the defendant's detention was not pursuant to federal criminal charges, the "ruse exception" does not apply even when federal criminal authorities may have been aware of or involved with that detention. *Id.* at 600. Here, defendant has not provided evidence of collusion between the state and federal authorities. Even though the state troopers who arrested Gibson discussed the possibility that the Bureau of Alcohol, Tobacco, Firearms and Explosives, Tyler Field Office (ATF) might be interested in adopting the case for federal prosecution at some point in the future, there is no evidence that the state troopers colluded with the ATF or the U.S. Attorney's Office to arrest Gibson on March 20, 2021. As such, defendant has not provided enough evidence for the "ruse exception" to apply. Therefore, the 30-day requirement under 18 U.S.C. § 3161(b) was not violated.

### D. Whether the government engaged in unfair prosecutorial misconduct because of the delay between the date of his arrest and the date of his indictment, violating his Fifth Amendment right to due process

The defendant has the burden of proving, by a preponderance of the evidence, prosecutorial vindictiveness. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Defendant alleges vindictive prosecution because the indictment included two felony allegations: that he was previously convicted of the felony offense of robbery in

1995 and a more recent felony conviction of unlawful possession of a firearm by a serious violent felon. Doc. 18 at 27–28. Defendant relies on a Fifth Circuit case where the court held that, under the circumstances of that case, evidence regarding two additional felony convictions was both unnecessary and irrelevant. *United States v. Quintero*, 872 F.2d 107, 111 (5th Cir. 1989). However, in *Quintero*, the defendant offered to stipulate to one prior felony conviction to satisfy the essential element of a previous felony conviction. *Id*. Further, the government is not ordinarily limited to the proof of only one felony conviction when proof of a previous conviction is an element of its case. *United States v. Bruton*, 647 F.2d 818, 825 (8th Cir. 1981). Gibson can avoid the potential prejudice of having the jury hear evidence of more than one prior felony conviction by agreeing to stipulate to his status as a previously convicted felon at trial. Since Gibson's status as a convicted felon is an essential element of the offense, which the government has the burden of proving at trial beyond a reasonable doubt, the inclusion of two prior conviction allegations in the indictment are not enough to meet defendant's burden of proving prosecutorial vindictiveness.

Defendant also argues that the delay between the time of his arrest on state charges and his federal indictment was evidence of prosecutorial vindictiveness. However, as stated above, the U.S. Attorney's Office did not know of Gibson's arrest on March 20, 2021, until April 21, 2021. ATF also did not submit a full investigation report recommending prosecution until May 25, 2021. Subsequently, the U.S. Attorney's Office presented the matter to the Eastern District of Texas Grand Jury on June 17, 2021, within one month of receiving the ATF investigation report. Since there was no unreasonable delay, Gibson failed to satisfy his burden of proving prosecutorial vindictiveness by a preponderance of the evidence.

**E. Whether the government unreasonably delayed the case between the date of his arrest on state charges, the date of his federal indictment, and the date of trial, violating defendant's Sixth Amendment right to a speedy trial**

Defendant next argues that the period of delay between his arrest or the indictment and the impending trial has been unreasonably delayed. This, according to defendant, would violate the right to a speedy trial guaranteed by the Sixth Amendment. *Barker v. Wingo*, 407 U.S. 514 (1972). The delay in this case, however, is not unreasonable.

The Sixth Amendment right to a speedy trial considers four factors: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. "Delay occasioned by the prosecution of the defendant in another jurisdiction is not a basis for a dismissal on constitutional speedy-trial grounds." *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010).

Here, the government's reason makes the delay justifiable. The state charges "accounted for the delay and justified putting" this case on hold. *Id.* Defendant was initially arrested on March 20, 2021, and was extradited to Indiana on April 19, 2021. Doc. 18 at 2–3. Defendant was then sentenced for the Indiana charges on August 19, 2021. *Id.* at 4. On February 2, 2022, defendant was writted into federal custody. Doc. 6. The period since the writ is also excluded, since this time was spent physically moving defendant and resolving motions filed by defendant. Excluding that time, the delay is only five months. Five months is significantly less than the one-year presumption of prejudice limit. *Ellis*, 622 F.3d at 791.

Given the complexities of working with state officials and moving defendant between Indiana and Texas, the period of delay is not unreasonable. Defendant's Sixth Amendment right to a speedy trial has not been violated.

### F.  Whether the court lacks subject-matter jurisdiction and personal jurisdiction because he was placed in federal custody and transported from Indiana state prison to the Eastern District of Texas, in violation of the Interstate Agreement on Detainers

Defendant claims that he was moved from Indiana to Texas without being advised of the source or contents of his detainer in

violation of the International Agreement on Detainers ("Agreement"). Doc. 18 at 53–54. But no detainer was applied to defendant. Thus, the Agreement does not apply to this case.

The Agreement provides cooperative procedures among states and the United States to facilitate the disposition of outstanding charges against prisoners. *United States v. Mauro*, 436 U.S. 340, 351 (1978). The warden of the institution holding a prisoner is required to inform him of the source and content of any detainer lodged against him. *Id.*; 18 U.S.C. app. 2, § 2 (art. III(c)). Failure to abide by certain provisions of the agreement can result in dismissal of a charge. *Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998).

In this case, defendant was transferred to federal custody based on a writ of habeas corpus *ad prosequendum*. Doc. 6. These are not "detainers" for purposes of the agreement. *Mauro*, 436 U.S. at 361. Thus, the Agreement is not implicated.

Even if it were implicated, dismissal is not appropriate. Dismissal of an indictment is not an available remedy for violations of the notice requirement of the Agreement. *United States v. Lualemaga*, 280 F.3d 1260, 1265 (9th Cir. 2002); *Lara*, 141 F.3d at 243 ("[I]t would be inappropriate for the federal courts to judicially expand the list of situations in which dismissal is dictated.").

### G.  Whether 18 U.S.C. § 922(g) is unconstitutional under the Second and Ninth Amendments

Finally, defendant alleges that 18 U.S.C. § 922(g), felon in possession of a firearm, unconstitutionally infringes his Second and Ninth Amendment rights. Doc. 18 at 57. Defendant is correct that law-abiding individuals possess the right to use and own firearms. *District of Columbia v. Heller*, 554 U.S. 570 (2008). This right is not absolute, and the Supreme Court recognized in *Heller* that "longstanding prohibitions on the possession of firearms by felons" are not constitutionally invalid. *Id.* at 626. Given this clear, binding precedent, defendant's claim is rejected. The charge is constitutional.

## II. Motion to suppress

Defendant seeks to suppress two firearms and ammunition that were found in his vehicle that form the basis for his indictment. The relevant facts are undisputed. For the following reasons, a hearing is not needed, and the motion to suppress is denied.

### A. Facts

On March 20, 2021, defendant was pulled over for speeding. Docs. 19, 23. After asking for his license and registration, Texas Department of Public Safety ("DPS") Trooper Justin Craig learned through dispatch that defendant had prior felony convictions and also had an active felony warrant from Indiana for "Unlawful Possession of a Firearm by a serious Violent Felon." Doc. 23. Defendant was detained. *Id.* A second officer on the scene, Trooper Cooper, commented to Craig that the inventory of the car "might produce interesting results" because defendant had three cell phones, several air fresheners, and a GPS in his car. *Id.* at 2. Defendant was then arrested once Craig confirmed the arrest warrant was valid. *Id.* Craig also called for a tow for defendant's vehicle. *Id.* Defendant was then informed that Craig would be performing an inventory of the contents of his vehicle and asked whether he had anything important or valuable he wanted to ensure made the inventory list. *Id.* Craig also asked if defendant had anything illegal in the car. Docs. 19 at 8, 23 at 2. Defendant said he did not. *Id.*

At this point, a Gregg County Sheriff's deputy had also arrived. A second officer, DPS Trooper Cooper, commented about the items they saw in defendant's car, and the sheriff's deputy responded that defendant was likely smoking marijuana. *Id.* at 3. Cooper then commented that he had "once seized 55 [pounds] of marijuana from a car that had been stopped for driving 96 miles per hour." *Id.* After the deputy left, DPS Troopers Craig and Cooper began conducting a search of defendant's car. *Id.* Craig was to announce the items while Cooper wrote them down, although both initially inspected the inside of the car. *Id.* at 3–4. The search included tapping doors, pushing on the back of the front passenger seat, pushing on the tires, pushing the floor, and making a list of the items found in the car,

including in the glovebox, the center console, a rear storage compartment, a black plastic trash bag, and a suitcase. *Id.* at 3–4. In the back seat, the officers found a glass jar of marijuana, which led the officers to believe there may be more drugs in the vehicle. *Id.* at 4. The subsequent search of the suitcase revealed an additional firearm, ammunition, and magazines. *Id.* at 4. The officers also pushed a button on the center console, which opened another compartment that contained a loaded pistol. *Id.* at 3. All items found in the vehicle were included in the inventory list. *Id.* at 3–5.

### B. Analysis

The defendant bears the burden of proof for suppression motions. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). A criminal defendant is not entitled to an evidentiary hearing on a suppression motion "as a matter of course." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). An evidentiary hearing is required only if the defendant "alleges sufficient facts which, if proved, would justify relief." *Id.* These factual allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* (quoting *United States v. Poe*, 462 F.2d 195, 197 (5th Cir. 1972)).

However, a criminal defendant must also timely file any pretrial motions to suppress. Fed. R. Crim. P. 12(b)(3)(C). Any pretrial motion submitted after the court's deadline is considered "untimely." *Id.* at 12(c)(3). Untimely pretrial motions are forfeited, not waived. *United States v. Vasquez*, 899 F.3d 363, 372–73 (5th Cir. 2018). However, the court may consider the motion if there is "good cause." Fed. R. Crim. P. 12(c)(3). Defendant's deadline to file pretrial motions, including motions to suppress, was March 28, 2022. Doc. 14. Defendant did not put the motion in the mail until March 31, 2022, and the court received it on April 4, 2022. Doc. 19. Defendant's motion, therefore, was untimely filed.

Because defendant's motion to suppress was untimely filed, the motion is forfeited and good cause does not exist to consider it. But, even if good cause did exist or if the motion had been timely filed,

defendant failed to allege sufficient facts that, if proved, would justify relief.

"Under the Fourth Amendment, '[w]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions.'" *Rountree v. Lopinto*, 976 F.3d 606, 609 (5th Cir. 2020) (citation omitted). Inventory searches are one exception to the rule. "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 812, n.1 (1996). Inventory searches must be conducted according to standardized regulations and procedures to "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. McKinnon*, 681 F.3d 203, 209–210 (5th Cir. 2012). Regulations and procedures also prevent the search from becoming "a ruse for general rummaging . . . to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Officers can be given latitude to determine if a closed container should be opened or not based on the characteristics of the container and the nature of the search but must still be subject to standardized criteria. *Wells*, 495 U.S. at 4.

Texas law has several procedures in place for inventory searches. "All property which comes into the care, custody or control of an officer of the department will be inventoried as soon as practicable and a written record of the results of the inventory made on the prescribed form." 37 Tex. Admin. Code § 3.56(b), (c). Closed containers "shall be opened, if it can be opened without damaging the container, and the contents shall be recorded" on the appropriate form. Tex. Highway Patrol Proc. Manual, Section 04.21.00, *Property Inventory Procedures*, 21.05 Policy, Subsection 2. The Texas DPS General Manual also requires that, unless force is required to open it, closed containers and compartments, including suitcases, glove boxes, and consoles, "will be opened, inventoried, and the contents noted" on the appropriate form. DPS GENERAL MANUAL, Section

01.24.00.00, *Handling and Disposition of Entrusted Properties*, 05.02 Policy, Subsection 2.

Although defendant alleged many facts, they are not sufficient to justify the relief of suppressing the weapons and ammunition found during the troopers' search of the vehicle. Defendant admits he was speeding and that there was an active felony warrant for his arrest when he was stopped. Doc. 19 at 3, 5. His arrest, therefore, is not disputed. He does not contest the locations of the two weapons in the car. *Id.* at 12–13. He also agrees that the officers filled out an inventory sheet that lists the items found and seized from the car, although he alleges that they did not write everything down. *Id.* at 13. Nor does he contest that the police can impound his car. What defendant contests is whether the search was a lawful inventory search. He argues that the troopers did not follow "any established inventory policy of their agency" and that procedures and regulations are not on the record; therefore, their inventory search cannot be validated. Doc. 19 at 29–31, 33. Defendant also argues the search was performed in an unlawful manner because of the subjective beliefs and motivations of Troopers Craig and Cooper that they would find evidence of a drug crime, making the search unconstitutional. *Id.* at 16.

The government has sufficiently provided evidence of the procedures and regulations that Troopers Craig and Cooper were required to follow. The facts also show that they followed the standard procedures in place for inventory searches. They opened the suitcase, glove box, and center console, as required. Under the procedures, they were allowed to push the button on the console to reveal the compartment with the gun. The troopers also wrote down the items they found in the car, which was required. The weapons and ammunition, then, were discovered during a lawful inventory search that complied with established procedures and regulations.

The officers' subjective suspicions or motives do not make the valid inventory search unconstitutional. "It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers.

[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (internal citations omitted). "[I]f an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir. 1979). Here, the troopers conducted a lawful inventory search and did not go beyond the procedures and regulations. Whatever hidden suspicions or motives the troopers had that defendant might have drugs, as expressed during the stop, is irrelevant and does not make the troopers' lawful inventory search unlawful.

## Conclusion

For the foregoing reasons, the court denies defendant's motion to dismiss (Doc. 18) and defendant's motion to suppress evidence (Doc. 19).

*So ordered by the court on April 13, 2022.*

J. CAMPBELL BARKER
United States District Judge